UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DAYTREND DENONE MOSES** | **CIVIL ACTION** |
| **VERSUS** | **NO. 20-2361** |
| **MOHAMED MAHMOUD, ET AL.** | **SECTION "H"(4)** |

**PARTIAL REPORT AND RECOMMENDATION**

This matter was referred to a United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and submit proposed findings and recommendations for disposition pursuant to **28 U.S.C. § 636(b)(1)(B) and (C), § 1915(e), and § 1915A**, and as applicable, **42 U.S.C. § 1997e(c)(1) and (2)**. On December 15, 2020, the Court conducted a hearing pursuant to *Spears v. McCotter*,[1] and its progeny, with plaintiff and counsel for defendants participating by telephone.[2] Upon review of the record, the Court has determined that this matter can be disposed of in part without further evidentiary hearing.

I.  **Factual and Procedural Background**

  A.  **Complaint**

Plaintiff Daytrend DeNone Moses is incarcerated in the Nelson Coleman Correctional Center ("NCCC") in Killona, Louisiana.[3] He filed this *pro se* and *in forma pauperis* complaint pursuant to 42 U.S.C. § 1983 against defendants Deputy Mohamed Mahmoud, Deputy Garrett Haun, Sergeant Darryl Richardson, Lieutenant Elizabeth Raiford, and Nurse Juanasha Smith. Specifically, Moses claims that on April 20, 2020, Deputy Haun sexually assaulted him during a

---

[1] 766 F.2d 179 (5th Cir. 1985). The purpose of the *Spears* Hearing is to ascertain what the prisoner alleges occurred and the legal basis for the claims. The information received is considered an amendment to the complaint or a more definite statement under Fed. R. Civ. P. 12(e). *Wilson v. Barientos*, 926 F.2d 480, 482 (5th Cir. 1991).
[2] ECF 15.
[3] ECF 1.

strip search conducted as Moses was being placed in administration segregation. Moses also claims that Deputy Haun verbally threatened to taser him if he did not comply with the Deputy's commands to face the wall, bend over, and spread his buttocks. Moses asserts that when he complied, Deputy Haun then ordered him to stick his own finger in his anus. Moses claims that, after he did so, Deputy Haun laughed and called him "a pussy."

Moses further claims that, when Deputy Mahmoud later brought his property to the segregation cell, he told the Deputy that he wanted to speak to the supervisor, Lt. Raiford, about the incident with Deputy Haun. Sgt. Richardson walked up as Deputy Mahmoud walked away. Plaintiff spoke with Sgt. Richardson, who told plaintiff to "suck it up" because he was in prison. Plaintiff again asked to talk to Lt. Raiford but was ignored.

Moses claims that Lt. Raiford later walked into the area, and he tried to tell her what happened. He alleges that she would not talk to him face-to-face. Instead, she told him it was her jail and she could do what she wanted, which he believes was deliberate indifference to the assault by Deputy Haun. He also states that Lt. Raiford then spoke to the Sergeant and deputies. Later, deputies went to his cell to handcuff him to escort him off the tier. He claims that Deputy Mahmoud grabbed his right bicep and escorted him down the stairs. When plaintiff asked where they were going, Deputy Mahmoud told him to shut up and began to speed up, pushing him down. He claims that Lt. Raiford and Sgt. Richardson were present, and the Sergeant told plaintiff to stop complaining, using a racial slur.

Moses alleges that he was taken to the medical unit. He claims that he told Dr. Woods what happened in both incidents, and he was placed on medication due to the injuries from excessive force by Deputy Mahmoud.

B.  *Spears* **Hearing Testimony**

Moses testified that he is serving a 25 year sentence for an attempted murder conviction prior to his transfer to the St. Charles Parish jail. He stated that he was a fairly new inmate when the April 20, 2020 incident occurred with Deputy Haun. As background, he explained that he was being placed in administrative segregation after being charged with the disciplinary violation for fighting. In connection with that incident, he was examined in medical and was found to have no injuries, marks, or scratches. Although he claims that he was not fighting, and instead was only getting a book to read from another cell, the prison authorities placed him in segregation pending the investigation of that incident.

Moses stated that, while being placed in administrative segregation for that, Deputy Haun told him to strip and "bust my ass open." Moses claimed that Deputy Haun threatened to taser him if he did not comply. Moses then faced the wall and bent over as instructed. He stated that Deputy Haun then told him put his fingers inside his anus. Moses claims that when he did, Deputy Haun laughed at him and called him "a pussy." After getting dressed, Moses tried to get the attention of Deputy Mahmoud so he could speak to Lt. Raiford. The Deputy told him that Lt. Raiford would not come to see him. Moses then put his blanket up to the bars to prevent the deputies from seeing into his cell, knowing that this was against the rules. Sergeant Richardson then approached Moses's cell and Moses tried to tell him what happened. The deputies and Sgt. Richardson just walked away.

Moses stated that he later saw Lt. Raiford enter the dormitory to hold disciplinary board court. He tried to get her attention but she did not respond. After this, closer to midnight, the deputies came to his cell and put him in handcuffs. One deputy grabbed his belongings and Deputy Mahmoud grabbed him by the left arm to escort him out. Moses stated that he was handcuffed

and in slippers and had difficulty going down the stairs. He stated that, when he asked to slow down, Deputy Mahmoud pushed him faster and told him to stop complaining. Moses claims that he then fell to the floor because the Deputy was pushing him. He claims that he injured his shoulder and knee and twisted his back. He stated that Sgt. Richardson came over to him where he fell and told him to stop complaining or something worse would happen.

After this, he was taken to the medical unit and along the way, Lt. Raiford used a racial slur to describe plaintiff and his complaining. In the medical unit, Moses spoke with Nurse Smith about what happened to him. He claims that, without examining him, she told him he would be alright and could see the doctor in the morning. He was sent back to his dorm without treatment or pain medication.

Moses testified that he filed a grievance complaint and a Prison Rape Elimination Act ("PREA") complaint the next morning, on April 21, 2020. He labeled the incident with Deputy Haun as a PREA complaint although the deputy did not physically touch him. He believed that the search in that way was unnecessary because the jail can use a body scanner rather than force him to put his fingers in his anus to have deputies treat it like a joke. He stated that he also believed it was a PREA violation because he was threatened with harm if he did not comply. He was embarrassed by the incident and upset that other deputies would later pass his cell and laugh at him in front of other inmates.

Also, on the morning of April 21, 2020, Moses was examined by the prison doctor, who prescribed naprosin, Tylenol, and a muscle relaxer cream for the pulled muscle in his back. Moses stated that his shoulder healed, and he continues to be treated by the doctor for his back pain. As instructed by the doctor, he walks and stretches when he is able to during outside activity periods.

Moses also explained that, after he filed his grievances on April 21, 2021, he stopped eating for about a week to get the prison officials' to respond to his PREA grievance. He was sent to speak with Ms. Bridget in the medical unit because he was not eating. He was eventually placed on suicide watch for a week although he was not suicidal; he just wanted someone to hold Deputy Haun accountable for his actions.

Moses claims that he inquired about the status of his complaint. Around May 18, 2020, he saw Lt. Ferinio (spelled phonetically) in his office and was asked if he would take a lie detector test about his PREA claims. Moses stated that he was never given the test. Instead, Lt. Ferinio wrote a response to the complaint indicating that the investigation showed that the cavity search did not amount to a PREA violation. He appealed that finding to the Warden, and the Warden responded that this was a correct conclusion. Moses filed this suit because there were no other steps in the jail's grievance process.

Moses testified that he also received a response to his grievance complaint about his claim that Deputy Mahmoud pushed him down the steps. In that response, Lt. Ferinio stated that the investigation showed that Moses mischaracterized the situation on the steps. On appeal, the Warden agreed with this conclusion.[4]

Moses indicated that he sued Deputy Mahmoud for the excessive force he used on the stairs which caused him to fall. He sued Sgt. Richardson because he did not immediately address the PREA incident with Deputy Haun. He also claims that, although he was standing nearby, Sgt. Richardson failed to intervene when Deputy Mahmoud pushed plaintiff on the stairs. Instead, he simply told plaintiff to stop complaining or something worse could happen.

---

[4] During the hearing, the Court ordered counsel to provide a copy of or link to the video of the incident. The electronic link was received on December 21, 2020, and is currently secured by Chambers.

Moses stated that he sued Deputy Haun for the PREA incident during the cavity search. He also sued Nurse Smith for her failure to examine and treat him on the night of his fall down the stairs. He stated that he sued Lt. Raiford because she is a supervisor and took no action to address the PREA incident. Moses also indicated that he is seeking compensatory and punitive monetary damages. Moses also requested that the video of the incident on the stairs be obtained as support for his claims against Deputy Mahmoud.

As an aside, Moses also told the Court that, should this case proceed and discovery be allowed, he would like the Court to address the prison's policy of opening and scanning legal mail into the kiosk system rather than giving the mail to the inmate.[5] Although he is not asserting a claim regarding the policy, he requests that the Court consider granting an exception for him to access discovery materials if necessary in this case.

## II. <u>Standards for a Frivolousness Review</u>

Pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A and 42 U.S.C. § 1997e(c), the Court is required to *sua sponte* dismiss cases filed by prisoners proceeding *in forma pauperis* upon a determination that they are frivolous. The Court has broad discretion in determining the frivolous nature of the complaint. *See Cay v. Estelle*, 789 F.2d 318, 325 (5th Cir. 1986), *modified on other grounds*, *Booker v. Koonce*, 2 F.3d 114 (5th Cir. 1993). However, the Court may not *sua sponte* dismiss an action merely because of questionable legal theories or unlikely factual allegations in the complaint.

Under this statute, a claim is frivolous when it lacks an arguable basis either in law or fact. *Neitzke v. Williams*, 490 U.S. 319, 324-25 (1989); *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir.

---

[5] Defense counsel was instructed at the *Spears* Hearing to provide the Court with information related to this policy for the Court's future reference if needed.

1998). "A [claim] lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Harper v. Showers*, 174 F.3d 716, 718 (5th Cir. 1999) (quoting *Davis v. Scott*, 157 F.3d 882, 889 (5th Cir. 1998)). It lacks an arguable factual basis only if the facts alleged are "clearly baseless," a category encompassing fanciful, fantastic, and delusional allegations. *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992) (citing *Neitzke*, 490 U.S. at 327-28). Thus, the Court must determine whether plaintiff's claims are based on an indisputably meritless legal theory or clearly baseless factual allegations. *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994); *Jackson v. Vannoy*, 49 F.3d 175, 176-77 (5th Cir. 1995); *Moore v. Mabus*, 976 F.2d 268, 269 (5th Cir. 1992).

### III. Discussion

The Court's initial duty is to examine Moses's claims under the statutory standards outlined above. The Court is aware that, prior to the *Spears* Hearing, the defendants filed a motion seeking to dismiss at least some of plaintiff's claims and that motion will be addressed by separate Report and Recommendation. In this Partial Report and Recommendation, the Court will dispose of the claims determined to be frivolous and otherwise fail to state a claim for which relief can be granted as required by 28 U.S.C. § 1915 and § 1915A.

#### A. Eighth Amendment General Standards

The treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). "[A] prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id*. at 847. In other words, the prison official must have a sufficiently culpable state of mind, one of "deliberate

indifference" to inmate health or safety. *Id*. at 834. To find that an official is deliberately indifferent, it must be proven that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837.

### B. Claims Against Nurse Smith

Moses has alleged that, on the night of his fall down the stairs, he was taken to the medical unit around midnight where he was met by Nurse Smith. He claims that Nurse Smith did not conduct a medical examination or provide him with medication for his discomfort. Instead, he claims, she told him he would be seen by the doctor in the morning. Moses confirmed that he was in fact examined by the physician later that morning and provided with anti-inflammatories and topical cream for his muscle discomfort. He has continued to receive treatment and care.

Deliberate indifference by prison personnel or medical staff to an inmate's serious medical needs constitutes the "unnecessary wanton infliction of pain," proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). "A serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." *Gobert v. Caldwell*, 463 F.3d 339, 345 n.12 (5th Cir. 2006); *Lewis v. Evans*, 40 F. App'x 263, 264 (5th Cir. 2011). A prison official is deliberately indifferent if he or she has actual knowledge of a substantial risk of harm to an inmate and disregards that substantial risk. *Farmer*, 511 U.S. at 847; *see also Parrish v. Cleveland*, 372 F.3d 294, 302 (4th Cir. 2004) (the standard of deliberate indifference requires actual knowledge and disregard of a substantial risk of serious injury); *Washington v. LaPorte County Sheriff's Dep't*, 306 F.3d 515 (7th Cir. 2002) (same). Deliberate indifference is manifested in the providers intentional denial of medical care or intentionally interfering with the treatment once prescribed. *Farmer*, 511 U.S. at

847. To state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment. *Id*.

Moses claims that Nurse Smith denied him immediate care for the injuries caused by his fall on the stairs. However, the mere delay alone in receiving medical treatment is usually not sufficient to state a claim under § 1983. *See Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006) (citing *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993)). Regardless of the length of the delay, the plaintiff must show deliberate indifference to a serious medical need that resulted in substantial harm. *Alderson v. Concordia Parish Correctional Facility*, 848 F.3d 415, 422 (5th Cir. 2017); *Easter*, 467 F.3d at 463. To do so, a plaintiff must establish deliberate indifference by showing that an official "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Alderson*, 848 F.3d at 422. The pain suffered during a delay in treatment or an increase in the risk of infection can constitute a substantial harm and form the basis for an award of damages. *Id*. at 422-23. However, "delay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference, which results in substantial harm." *Mendoza*, 989 F.2d at 195.

Here, Moses alleges that the nurse was indifferent when she determined that his complaints could wait until he could be seen by the doctor later that morning. His disagreement with her medical assessment, however, cannot be a basis for liability under the Eighth Amendment. *Gibson v. Collier*, 920 F.3d 212, 220 (5th Cir. 2019), *cert. denied*, 140 S. Ct. 653 (2019); *Gobert*, 463 F.3d at 346. A determination about whether a certain form of treatment is indicated or about whether to provide treatment is "a classic example of a matter for medical judgment" that does not

9

constitute deliberate indifference. *Estelle*, 429 U.S. at 107. Even assuming that this was a lapse in Nurse Smith's professional judgment, allegations of negligence or even malpractice are insufficient to establish deliberate indifference and do not state a constitutional violation. *See Estelle*, 429 U.S. at 106; *Gibson*, 920 F.3d at 219-20.

Moses, therefore, does not present allegations to show that Nurse Smith was unconstitutionally indifferent to a serious medical need when she deferred his care to the doctor later that morning, nor does he indicated that the brief delay caused him substantial harm. Further, once he was seen by the doctor just hours later, he was treated with mild anti-inflammatories and a cream for his back pain. The brief delay before seeing the doctor is not alleged to have exacerbated his injuries for which he did received treatment. Moses's claims against Nurse Smith are frivolous and otherwise fail to state a claim for which relief can be granted. The claims should be dismissed pursuant to 28 U.S.C. § 1915(e) and § 1915A.

### C. Claims Against Deputy Haun

Moses alleges that Deputy Haun's verbal actions during the April 20, 2020, strip search violated his rights under PREA and caused him embarrassment and distress. Moses reported Deputy Haun's actions as violations of PREA[6] and reported them to jail officials orally and through a written grievance complaint. Moses made clear at the *Spears* Hearing that there was *no* injury or physical contact by Deputy Haun, only instructions for Moses to conduct the cavity search with his own fingers. His PREA claims were based on Deputy Haun's instructions, threat to use a taser, and laughter and comments to Moses immediately after the incident. Under the law, however, Moses's PREA claims are frivolous and otherwise fail to state a claim for which relief can be granted under § 1983.

---

[6] *See* 34 U.S.C. §§ 30301-09.

One main purpose for PREA is to make prison administrators accountable for creating and enforcing policies to prevent and address rape in prison. *Does 8-10 v. Snyder*, 945 F.3d 951, 955-56 (6th Cir. 2019).[7] However, PREA does *not* create a private cause of action for a victim or a federal right for purposes of suit under § 1983. *See Krieg v. Steele*, 599 F. App'x. 231, 232-33 (5th Cir. 2015); *Herndon v. Tanner*, No. 17-02350, 2017 WL 3841836, at *4 (E.D. La. Jul. 26, 2017). "[A]ny claim raised under the PREA is properly dismissed as frivolous." *Krieg*, 599 F. App'x at 233; *see also Moses v. GEO*, No. 17-CV-1595, 2018 WL 1354068, at *3 (W.D. La. Mar. 14, 2018) (dismissing claims that officials failed to follow PREA protocol); *Peterson v. VOA Greater New Orleans, Inc.*, No. 16-17611, 2017 WL 695398, at *2 n.1 (E.D. La. Feb. 22, 2017) ("The Fifth Circuit has additionally stated that any claim raised under PREA should properly be dismissed as frivolous.") (citing *Krieg*, 599 F. App'x. at 233). Thus, Moses has failed to state a non-frivolous claim against Deputy Haun for the strip search incident.

In addition, Moses's overarching claim that Deputy Haun embarrassed him and called him "a pussy" also fails to present a claim under § 1983. The law is clear that mere verbal abuse and even threats by a prison guard do not rise to the level of a constitutional violation. *McFadden v. Lucas*, 713 F.2d 143 (5th Cir. 1983) ("Mere threatening language and gestures of a custodial officer do not, even if true, amount to a constitutional violation."); *Calhoun v. Hargrove*, 312 F.3d 730, 734 (5th Cir. 2002); *Bender v. Brumley*, 1 F.3d 271, 274 n. 4 (5th Cir. 1993) (noting that verbal abuse is insufficient to serve as the legal basis of a civil rights action.). Furthermore, under the Prison Litigation Reform Act of 1996 ("PLRA"), a plaintiff cannot recover compensatory damages "for mental or emotional injury suffered while in custody without a prior showing of physical

---

[7] 34 U.S.C. § 30302 ("The purposes of this chapter are to - (6) increase the accountability of prison officials who fail to detect, prevent, reduce, and punish prison rape.")

injury or the commission of a sexual act (as defined in section 2246 of Title 18)." 42 U.S.C. § 1997e(e). The verbal acts described by Moses do not constitute sexual acts as defined by 18 U.S.C. § 2246.[8] Thus, without some physical injury resulting from the strip search incident, § 1997e(e) precludes recovery of damages for mental and emotional injury.

For these reasons, Moses's claims against Deputy Haun are frivolous and otherwise fail to state a claim for which relief can be granted. The claims should be dismissed pursuant to 28 U.S.C. § 1915, § 1915A.

### D. Claims Against Sgt. Richardson and Lt. Raiford

Broadly construing his complaint and *Spears* Hearing testimony, Moses alleges that the supervising officers, Sgt. Richardson and Lt. Raiford, are liable under § 1983 for their failure to investigate and address his claim of an alleged PREA violation by Deputy Haun. He also contends that Sgt. Richardson and Lt. Raiford failed to intervene when Deputy Mahmoud caused him to fall on the stairs. He further alleges that each officer used verbal slurs and insulted him after these incidents.

To recover under § 1983 against a supervisory official, a plaintiff must allege more than a mere theory of *respondeat superior* or liability simply because an employee or subordinate allegedly violated the plaintiff's constitutional rights. *See Alton v. Tex. A&M Univ.*, 168 F.3d 196,

---

[8] Title 18 U.S.C. § 2246 provides in relevant part as follows:
As used in this chapter--
[. . .]
(2) the term "sexual act" means--
(A) contact between the penis and the vulva or the penis and the anus, and for purposes of this subparagraph contact involving the penis occurs upon penetration, however slight;
(B) contact between the mouth and the penis, the mouth and the vulva, or the mouth and the anus;
(C) the penetration, however slight, of the anal or genital opening of another by a hand or finger or by any object, with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person; or
(D) the intentional touching, not through the clothing, of the genitalia of another person who has not attained the age of 16 years with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person[.]

200 (5th Cir. 1999); *see also Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002) ("Section 1983 does not create supervisory or respondeat superior liability."). Instead, a supervisory official is liable under § 1983 only if he or she was "personally involved in the acts causing the deprivation of his constitutional rights or a causal connection exists between an act of the official and the alleged constitutional violation." *Douthit v. Jones*, 641 F.2d 345, 346 (5th Cir. 1981); s*ee also Watson v. Interstate Fire & Cas. Co.*, 611 F.2d 120, 123 (5th Cir. 1980).

Moses has not alleged that he suffered any constitutional violation or physical injury resulting from any order, policy, or directive implemented by Sgt. Richardson or Lt. Raiford to create vicarious liability under § 1983. *See Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992); *Thompson v. Upshur County*, 245 F.3d 447, 459 (5th Cir. 1991); *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987); *see also City of St. Louis v. Praprotnik*, 485 U.S. 112, 124-25 (1988). Thus, to hold these supervisory officials liable, he must allege personal involvement in the alleged constitutional violations.

### 1. **Deputy Haun and the alleged PREA Violation**

Initially, as noted above, Moses has not stated a claim arising from an alleged PREA violation by Deputy Haun or his derogatory comments. The verbal instructions, no matter how embarrassing to plaintiff, were not sexual acts compensable under the PLRA. Sgt. Richardson and Lt. Raiford, therefore, had no cause to address Deputy Haun's behavior as a PREA concern and did not violate Moses's constitutional rights by failing to do so. In addition, as plaintiff reluctantly testified, the grievance officer at the jail investigated his PREA complaint and resolved that no violation had occurred. He has not demonstrated an indifference to any risk of or actual harm.

The officers' use of racial slurs and insults also do not present a constitutional concern. Allegations of threats and harassment by a guard, whether Deputy Haun, Sgt. Richardson, or Lt.

Raiford, simply do not state colorable civil rights claims and are not actionable under § 1983. *See*, *e.g.*, *Calhoun*, 312 F.3d at 734; *Bender*, 1 F.3d at 274 n.4 (verbal abuse is insufficient to serve as the legal basis of a civil rights action.). No matter how unfriendly or insulting any slur may have been, the alleged statements by the defendants did not violate the Constitution. Moses, therefore, has not asserted a constitutional violation by Sgt. Richardson or Lt. Raiford or an unconstitutional indifference to his safety or health arising from the incident with Deputy Haun.

### 2. Deputy Mahmoud and the Alleged Use of Force

As for the incident on the stairs with Deputy Mahmoud, Moses alleged in his *Spears* Hearing testimony that Sgt. Richardson and Lt. Raiford were present and must have known or at least heard his complaints that Deputy Mahmoud was rushing his descent down the stairs. He contends that because of this, Sgt. Richardson and Lt. Raiford acted with indifference and should have intervened to prevent his fall resulting from Mahmoud's unnecessary use of force.

In addition to the intentional indifference standards set forth above, the United States Fifth Circuit has held that when an officer is present at the scene and does not take reasonable measures to protect a suspect from another officer's use of excessive force may be found to have violated a federal right under § 1983 through a theory of bystander liability. *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995). Specifically, an officer may be liable if "the officer '(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act.'" *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013) (quoting *Randall v. Prince George's Cnty., Md.*, 302 F.3d 188, 204 (4th Cir. 2002) and citing other supporting cases).

In this case, Moses's intentional indifference and bystander-liability claims against Sgt. Richardson and Lt. Raiford rest on a determination of whether they knew and drew an inference

of the impending danger and whether Deputy Mahmoud acted unreasonably and used excessive force against Moses that would have required intervention by the observing officers. For the reasons assigned later in this report, Moses has at least stated a claim of intentional indifference and excessive force by Deputy Mahmoud sufficient to survive this frivolousness inquiry. For this reason, as well, the Court cannot find that Moses's claims of intentional indifference or bystander-liability against Sgt. Richardson and Lt. Raiford are frivolous until the risk of danger, if any, and the reasonableness of the force, if any, used by Deputy Mahmoud can be determined. This is a credibility call that is not appropriate on frivolousness review. This aspect of Moses's claims against Sgt. Richardson and Lt. Raiford should proceed forward.

E. **Claims Against Deputy Mahmoud**

Moses claims that, while escorting him off the tier, Deputy Mahmoud took him by the arm and walked him to the stairs. Moses stated that he was handcuffed and wearing shower slippers as shoes. While descending the stairs, Moses claims he asked the deputy to slow down and Deputy Mahmoud instead accelerated their descent by pushing plaintiff by the arm. Moses claims that this caused him to stumble, and he fell down the stairs onto his shoulder. Moses also claims that this amounted to excessive force and indifference to his safety. As noted above, he claims that Sgt. Richardson and Lt. Raiford witnessed the event and did not intervene to stop Deputy Mahmoud. Moses's claims involve both an allegation that Deputy Mahmoud was deliberately indifferent when Moses asked to slow down and an allegation that the acceleration or push down the stairs also amounted to use of excessive force.

Both deliberate indifference and excessive force that cause unnecessary and wanton infliction of pain will constitute cruel and unusual punishment proscribed by the Eighth Amendment. *Hudson v. McMillan*, 503 U.S. 1, 5 (1992); *Farmer*, 511 U.S. at 834. In evaluating

15

a claim of alleged use of excessive force by a prison official, the Supreme Court has instructed that "the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7. To prevail on such a claim, a plaintiff must first prove a subjective component by establishing that ". . . the defendant acted maliciously and sadistically in an 'unnecessary and wanton infliction of pain.'" *Mosley v. White*, 464 F. App'x 206, 211-12 (5th Cir. 2010) (quoting *Hudson*, 503 U.S. at 8). To make this determination, a court should consider: (1) the extent of the injury suffered; (2) the need for the application of force; (3) the relationship between the need and the amount of force used; (4) the threat reasonably perceived by the responsible official; and (5) any efforts made to temper the severity of a forceful response. *Baldwin v. Stalder*, 137 F.3d 836, 839 (5th Cir. 1998); *Hudson v. McMillian*, 962 F.2d 522, 523 (5th Cir. 1992).

A plaintiff must also establish an objective component, which requires that a prisoner demonstrate that the alleged wrongdoing was objectively "harmful enough" to establish a constitutional violation. *Hudson*, 503 U.S. at 8. However, not every malevolent touch, push, or shove by a prison official gives rise to a federal cause of action. *Id*. at 9. "Thus, a party's claim must allege more than a *de minimis* use of physical force in order to state a prima facie case of an Eighth Amendment violation." *Mosley*, 464 F. App'x at 212 (citing *Eason v. Holt*, 73 F.3d 600, 604 n.24 (5th Cir. 1996)). "The *de minimis* use of physical force is excluded from 'constitutional recognition,' unless it is of a sort 'repugnant to the conscience of mankind.'' Id. (quoting *Hudson*, 503 U.S. at 9-10). Although there is no categorical requirement that the physical injury be significant, serious, or more than minor, ". . . it is clear that some physical injury is required." *Lacey v. Galveston County Sheriff's Dept.*, No. 06-CV-0441, 2008 WL 624615 at *6 (S.D. Tex.

16

Mar. 5, 2008). If a prisoner fails to establish either the subjective or objective components, ". . . there is not a valid Eighth Amendment claim." *Mosley*, 464 F. App'x at 212.

Accepting Moses's claims as alleged, Deputy Mahmoud intentionally accelerated their descent down the stairs. This alleged action was despite, if not in response to, plaintiff's comment that they were moving too quickly in light of the handcuffing behind his back and the slip-on shower shoes. These allegations include elements of failure to respond to a recognized risk of injury and perhaps the intentional pushing or use of force, both of which led to plaintiff's fall to the ground and resultant injuries for which he required medical attention. In addition to temporary pain in his shoulder and knee, he continues to suffer with and receives treatment for the persistent pain in his back. He claims that he was told he twisted or strained his back and now has diminished physical activities as a result.

The allegations are at least sufficient to state a non-frivolous claim that Deputy Mahmoud acted with deliberate indifference to the risk plaintiff faced on the stairs and that any push by the deputy may have been more than *de minimis* force under the circumstances. The claims against Deputy Mahmoud are not frivolous and at least state a claim sufficient to survive statutory frivolousness review. Because of this, the intentional indifference and failure to intervene claims asserted against Sgt. Richardson and Lt. Raiford, mentioned above, also survive the Court's frivolousness review. These claims should be allowed to proceed.

## IV. Recommendation

It is therefore **RECOMMENDED** that Moses's § 1983 claims against Nurse Smith and Deputy Haun be **DISMISSED WITH PREJUDICE** as frivolous and otherwise for failure to state a claim for which relief can be granted pursuant to § 1915(e) and § 1915A.

It is further **RECOMMENDED** that Moses's § 1983 claims against Sgt. Richardson and Lt. Raiford for use of verbal slurs and threats and failure to investigate and address his PREA complaint against Deputy Haun be **DISMISSED WITH PREJUDICE** as frivolous and otherwise for failure to state a claim for which relief can be granted pursuant to § 1915(e) and § 1915A.

It is further **RECOMMENDED** that Moses's § 1983 claims against Deputy Mahmoud for intentional indifference and excessive force and against Sgt. Richardson and Lt. Raiford for intentional indifference and failure to intervene remain referred to the undersigned Chief Magistrate Judge for further proceedings.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[9]

New Orleans, Louisiana, this \_\_\_10th\_\_\_ day of February, 2021.

_____
**KAREN WELLS ROBY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

---

[9]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.