**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**DAYTREND DENONE MOSES**                    **CIVIL ACTION**

**VERSUS**                                   **NO. 20-2361**

**MOHAMED MAHMOUD, ET AL.**                  **SECTION "H"(4)**

**REPORT AND RECOMMENDATION**

Before the Court is the **Motion to Dismiss (ECF No. 14)** filed by the defendants, Deputy Mohamed Mahmoud, Sgt. Darryl Richardson, Lt. Elizabeth Raiford, Deputy Garrett Haun, and Nurse Juanasha Smith, seeking dismissal of plaintiff's claims against them under Fed. R. Civ. P. 12(b)(6). The motion was referred to a United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). On December 15, 2020, the Court conducted a hearing pursuant to *Spears v. McCotter*,[1] and its progeny, with the plaintiff and counsel for defendants participating by telephone.[2] Upon review of the record, the Court has determined that this motion can be disposed of without further evidentiary hearing.

I.    **Factual and Procedural Background**

      A.    **Procedural Posture of the Case**

      By separate Partial Report and Recommendation, the undersigned Chief Magistrate Judge conducted the statutory frivolousness review of plaintiff Daytrend DeNone Moses's *pro se* and *in forma pauperis* complaint pursuant to 28 U.S.C. § 1915(e) and § 1915A. In that partial report, the Court recommended that Moses's § 1983 claims against Nurse Smith and Deputy Haun be

---

[1] 766 F.2d 179 (5th Cir. 1985). The purpose of the *Spears* Hearing is to ascertain what the prisoner alleges occurred and the legal basis for the claims. The information received is considered an amendment to the complaint or a more definite statement under Fed. R. Civ. P. 12(e). *Wilson v. Barientos*, 926 F.2d 480, 482 (5th Cir. 1991).
[2] ECF 15.

dismissed with prejudice as frivolous and otherwise for failure to state a claim for which relief can be granted pursuant to § 1915(e) and § 1915A. The Court also recommended that Moses's § 1983 claims against Sgt. Richardson and Lt. Raiford for use of verbal slurs and threats and failure to investigate and address his Prison Rape Elimination Act ("PREA") complaint against Deputy Haun be dismissed with prejudice frivolous and otherwise for failure to state a claim for which relief can be granted pursuant to § 1915(e) and § 1915A. The Court further recommended, however, that Moses's § 1983 claims against Deputy Mahmoud for intentional indifference and excessive force and against Sgt. Richardson and Lt. Raiford for intentional indifference and failure to intervene be retained and remain referred to the undersigned Chief Magistrate Judge for further review. The Partial Report and Recommendation is pending before the District Judge.

This Report and Recommendation addresses defendants' Motion to Dismiss which was filed before the Court's *Spears* Hearing and statutory frivolousness review were completed. The Motion does not take into account the *Spears* testimony or the video tape of the fall incident which the Court obtained from defense counsel at the request of the plaintiff. Defendants have not sought to amend the motion to accommodate these materials.

**B.    Plaintiff's Allegations**

Although Moses's allegations were thoroughly outlined in the Court's Partial Report and Recommendation, they are repeated here for ease of reference. Moses is incarcerated in the Nelson Coleman Correctional Center ("NCCC") in Killona, Louisiana.[3] He filed this *pro se* and *in forma pauperis* complaint pursuant to 42 U.S.C. § 1983 against defendants Deputy Mahmoud, Deputy Haun, Sgt. Richardson, Lt. Raiford, and Nurse Smith alleging violations of his constitutional rights.

---

[3] ECF 1.

1.      **Complaint**

Moses claims that on April 20, 2020, Deputy Haun sexually assaulted him during a strip search conducted as Moses was being placed in administration segregation.  Moses claims that Deputy Haun verbally threatened to taser him if he did not comply with the Deputy's commands to face the wall, bend over, and spread his buttocks.  Moses states that when he complied, Deputy Haun then ordered him to stick his own finger in his anus.  Moses claims that, after he did so, Deputy Haun laughed and called him "a pussy."

Moses further claims that, when Deputy Mahmoud later brought his property to the segregation cell, he told the Deputy that he wanted to speak to the supervisor, Lt. Raiford, about the incident with Deputy Haun.  Sgt. Richardson walked up as Deputy Mahmoud walked away.  Plaintiff spoke with Sgt. Richardson, who told plaintiff to "suck it up" because he was in prison.  Plaintiff again asked to talk to Lt. Raiford to no avail.

Moses claims that Lt. Raiford later walked into the area, and he tried to tell her what happened.  He alleges that she would not talk to him face-to-face.  Instead, she told him it was her jail and she could do what she wanted, which he believes was deliberate indifference to the assault by Deputy Haun.  He also states that Lt. Raiford then spoke to the Sergeant and deputies.  Later, deputies came to his cell to handcuff him to escort him off the tier.  He claims that Deputy Mahmoud grabbed his right bicep and escorted him down the stairs.  When plaintiff asked where they were going, Deputy Mahmoud told him to shut up and began to speed up, pushing plaintiff down the stairs.  He claims that Lt. Raiford and Sgt. Richardson were present, and the Sergeant told plaintiff to stop complaining or something worse would happen.

Moses alleges that he was taken to the medical unit and along the way, Lt. Raiford used a racial slur to describe his complaining. He also claims that he told Dr. Woods what happened in both incidents, and he was placed on medication due to the injuries from the fall.

### 2.    *Spears* Hearing Testimony

Moses testified that he is serving a 25 year sentence for an attempted murder conviction prior to his transfer to the St. Charles Parish jail. He stated that he was a fairly new inmate when the April 20, 2020 incident occurred with Deputy Haun. As background, he explained that he was being placed in administrative segregation after being charged with the disciplinary violation for fighting. In connection with that incident, he was examined in medical and was found to have no injuries, marks, or scratches. Although he claims that he was not fighting, and instead was only getting a book to read from another cell, the prison authorities placed him in segregation pending the investigation of that incident.

Moses stated that, while being placed in administrative segregation for that, Deputy Haun told him to strip and "bust my ass open." Moses claimed that Deputy Haun threatened to taser him if he did not comply. Moses then faced the wall and bent over as instructed. He stated that Deputy Haun then told him put his fingers inside his anus. Moses claims that when he did, Deputy Haun laughed at him and called him "a pussy." After getting dressed, Moses tried to get the attention of Deputy Mahmoud so he could speak to Lt. Raiford. The Deputy told him that Lt. Raiford would not come to see him. Moses then put his blanket up to the bars to prevent the deputies from seeing into his cell, knowing that this was against the rules. Sgt. Richardson then approached Moses's cell and Moses tried to tell him what happened. The deputies and Sgt. Richardson just walked away.

Moses stated that he later saw Lt. Raiford enter the dormitory to hold disciplinary court. He tried to get her attention but she did not respond. After this, closer to midnight, the deputies came to his cell and put him in handcuffs. One deputy grabbed his belongings and Deputy Mahmoud grabbed him by the "left" arm to escort him out. Moses stated that he was handcuffed and in slippers and had difficulty going down the stairs. He stated that, when he asked to slow down, Deputy Mahmoud pushed him faster and told him to stop complaining. Moses claims that he then fell to the floor because the Deputy was pushing him. He claims that he injured his shoulder and knee and twisted his back. He stated that Sgt. Richardson came over to him where he fell and told him to stop complaining or something worse would happen.

After this, he was taken to the medical unit and along the way, Lt. Raiford used a racial slur to describe plaintiff and his complaining. In the medical unit, Moses spoke with Nurse Smith about what happened to him. He claims that, without examining him, she told him he would be alright and could see the doctor in the morning. He was sent back to his dorm without treatment or pain medication.

Moses testified that he filed a grievance complaint and a PREA complaint the next morning, on April 21, 2020. He labeled the incident with Deputy Haun as a PREA complaint although the deputy did not physically touch him. He believed that the search done in that manner was unnecessary because the jail can use a body scanner rather than force him to put his fingers in his anus to have deputies treat it like a joke. He stated that he also believed it was a PREA violation because was threatened with harm if he did not comply. He was embarrassed by the incident and upset that other deputies would later pass his cell and laugh at him in front of other inmates.

Moses stated that on that same morning, he was examined by the prison doctor, who prescribed naprosin, Tylenol, and a muscle relaxer cream for the pulled muscle in his back. Moses

stated that his shoulder healed, and he continues to be treated by the doctor for his back pain. As instructed by the doctor, he walks and stretches when he is able to during outside activity periods.

Moses also explained that, after he filed his grievances on April 21, 2020, he stopped eating for about a week because the prison officials' had not responded to his PREA grievance. He was sent to speak with Ms. Bridget in the medical unit because he was not eating. He was eventually placed on suicide watch for a week, although he was not suicidal; he just wanted someone to hold Deputy Haun accountable for his actions.

Moses claims that he continued to inquire about the status of his complaint. Around May 18, 2020, he saw Lt. Ferinio (spelled phonetically) in his office and was asked if he would take a lie detector test about his PREA claims. Moses stated that he was never given the test. Instead, Lt. Ferinio wrote a response to the complaint indicating that the investigation showed that the cavity search did not amount to a PREA violation. He appealed that finding to the Warden, and the Warden responded that this was a correct conclusion. Moses filed this suit because there were no other steps in the jail's grievance process.

Moses also testified that he received a response to his grievance complaint about his claim that Deputy Mahmoud pushed him down the steps. In that response, Lt. Ferinio stated that the investigation showed that Moses mischaracterized the situation on the steps. On appeal, the Warden agreed with this conclusion.

Moses indicated that he sued Deputy Mahmoud for the excessive force he used on the stairs which caused him to fall. He sued Sgt. Richardson because he did not immediately address the PREA incident with Deputy Haun. He also claims that, although he was standing nearby, Sgt. Richardson failed to intervene when Deputy Mahmoud pushed plaintiff on the stairs. Instead, he simply told plaintiff to stop complaining or something worse could happen.

Moses stated that he sued Deputy Haun for the PREA incident during the cavity search. He also sued Nurse Smith for her failure to examine and treat him on the night of his fall down the stairs. He stated that he sued Lt. Raiford because she is a supervisor and took no action to address the PREA incident. Moses also indicated that he is seeking compensatory and punitive monetary damages. Moses also requested that the video of the incident on the stairs be obtained as support for his claims against Deputy Mahmoud.

**C.  Defendants' Motion to Dismiss (ECF No. 14)**

Prior to the *Spears* Hearing, and based solely on the allegations in the complaint, defendants moved for the dismissal of Moses's claims under Fed. R. Civ. P. 12(b)(6) and 28 U.S.C. § 1915(e). Defendants have not amended their motion to address Moses's *Spears* Hearing testimony or the video recording provided to the Court.

In the motion, the defendants assumed without explanation that Moses named each of them only in an official capacity. As such, the defendants assert that Moses failed to provide factual support for any claims against them in their official capacities. Specifically, defendants argue that Moses has no right of action under PREA against Deputy Haun. They also argue the alleged use of verbal slurs and insults by Deputy Haun and Sgt. Richardson did not violate the constitution.

Defendants further argue that the facts alleged in the complaint are insufficient to establish a use of force, any injury, or an intent to injure to support an excessive force claim against Deputy Mahmoud in his official capacity. Defendants assert that Moses "is no stranger to filing frivolous complaints" of excessive force, referring apparently to an unrelated 2016 case in another district

while he was in a different prison and suggesting that Moses should be aware of what is required to prove excessive force.[4]  ECF No. 14, p. 10-11.

In addition, defendants argue that the claims against Lt. Raiford are insufficient to hold her liable in her official capacity or as a supervisory officer.  Defendants assert that Moses did not identify a failure by her to train or supervise her subordinates for which she could be held liable under § 1983.

Defendants also assert that the claims against Nurse Smith should be dismissed because she "assuredly gave plaintiff an examination."  ECF No. 14, p. 15.  Defendants call upon the Court to "infer as much from plaintiff's Complaint" because Nurse Smith "naturally would have to gather information" before referring Moses to Dr. Woods.  *Id*.  In addition, defendants contend that the facts are insufficient to establish an intent by Nurse Smith to deny him medical care.

Defendants also argue that, in the alternative and to the extent they may have been named in their individual capacities, the claims are barred by qualified immunity.  Specifically, defendants' argue that Moses failed to identify a violation of a clearly established constitutional right.  Finally, defendants argue that punitive damages are not available against them in their official capacities.

D.    **Plaintiff's Opposition to the Motion (ECF No. 16)[5]**

---

[4] The defendants' reference is to the recommendation of a Magistrate Judge in a different court that Moses's unrelated 2016 excessive force claim at different prison be dismissed as frivolous.  However, as Moses would later point out in his opposition memorandum, ECF No. 16, that excessive force claim was **_not_** dismissed as recommended and instead was referred back to that same Magistrate Judge for further consideration in light of certain Fifth Circuit precedent.  *Moses v. Morgan*, No. 16-0390, 2017 WL 759017, at *1 (W.D. La. Feb. 27, 2017).

[5] Plaintiff's opposition is untimely.  However, he seeks forgiveness for this because he did not receive a copy of defendants' motion until December 18, 2020.  He contends that changes in the prison's mail policies caused the delay.  Finding no prejudice from the delay, the Court will consider plaintiff's opposition in its discussion.

In his opposition memorandum, Moses argues that Deputy Haun's actions during the strip search demonstrated a wanton state of mind as demonstrated by his threat to taser Moses if he did not comply.  He contends that Deputy Haun's actions were done to humiliate and harm him.

As for the excessive force by Deputy Mahmoud, Moses takes exception to the defendants irrelevant and inaccurate reference to his 2016 excessive force claim in another court and which was not dismissed as frivolous.  He also argues that, as stated in his *Spears* testimony, Deputy Mahmoud used unnecessary force to push him down the stairs while he was handcuffed behind his back.  He asserts that this was done maliciously to cause him to fall.

He further argues that Sgt. Richardson and Lt. Raiford as supervisors had a duty to intervene and instead showed intentional indifference to his safety at the hands of Deputy Mahmoud.

Moses also reiterates his claim that Nurse Smith never examined him and only referred him to the doctor.  He claims this showed indifference to his pain and need for care.

In response to the qualified immunity defense, Moses references his arguments that the defendants violated clearly established laws by their respective acts of intentional indifference, cruel and unusual punishment, failure to intervene, and use of force.  Broadly construing his pleading, Moses also asserts that defendants should have known that their actions violated his constitutional rights.  He further contends that the defendants are liable to him in their individual capacities.

## II.    <u>Standards of Review</u>

### A.    <u>Fed. R. Civ. P. 12(b)(6) Motions</u>

When reviewing a motion under Fed. R. Civ. P. 12(b)(6), the Court looks to the plaintiff's complaint to determine whether he has pleaded "sufficient factual matter, accepted as true, to 'state

a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The United States Fifth Circuit has held that, when reviewing *pro se* complaints, the court must employ less stringent standards while still guided by the *Iqbal* pleading requirements. *High v. Karbhari*, 774 F. App'x 180, 182 (5th Cir. Jun. 12, 2019). "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks omitted) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

A court's review of a Rule 12(b)(6) also "is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)). The district courts primarily look to the allegations found in the complaint but also may consider "documents incorporated into the complaint by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned." *Meyers v. Textron, Inc.*, 540 F. App'x 408, 409 (5th Cir. 2013) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).

In this case, Moses attached to his complaint the prison grievance complaints he filed about Deputies Haun and Mahmoud to his complaint. ECF No. 1-1. In grievance number 242032 (ECF No. 1-1, p.3), Moses references the video recording of his fall on the stairs as support for his claims against Deputy Mahmoud and asked that it be retained for future civil litigation. During the *Spears* Hearing, Moses made a similar request and encouraged the Court to obtain and view the video of

his fall on the stairs, which he believed would show that Deputy Mahmoud pushed to speed him down the stairs causing his fall. He also urged that the video would support his claim that Sgt. Richardson and Lt. Raiford were in position to have intervened in the incident.

The video clearly forms an integral part of Moses's claims and is referenced in his pleadings. The video may appropriately be considered in addressing defendants' Rule 12(b)(6) motion. *Blakely v. Andrade*, 360 F. Supp.3d 453, 472-73 (N.D. Tex. Jan. 23, 2019) (Order adopting attached Report and Recommendation) (considering dash board camera video in addressing motion to dismiss because the video was an integral part of plaintiffs' claims and referenced in their complaints) (citing *In re Katrina Canal Breaches Litig.*, 495 F.3d at 205; *Collins*, 224 F.3d at 498–99; and *King v. Fox Entm't Grp., Inc.*, No. 08-CV-688, 2009 WL 4573720, at *1 & n.2 (N.D. Tex. May 4, 2009) (considering a video recording in determining a motion to dismiss because it was referred to in the plaintiff's complaint and central to her claims)). However, the more prudent course for a court faced with tangent evidentiary items is to convert the motion to one for summary judgment under Fed. R. Civ. P. 56. *See* Fed. R. Civ. P. 12(d);[6] *see Henderson v. Anderson*, No. 09-548, 2009 WL 10673173, at *3 (S.D. Tex. Jul. 30, 2009), *report and recommendation adopted by* 2009 WL 10673165, at *1 (S.D. Tex. Nov. 10. 2009).

When such a conversion is made, the parties are entitled to notice and an opportunity to supplement their pleadings under Fed. R. Civ. P. 12(d). The parties were made aware by the Court in the *Spears* Hearing of its intention to obtain and consider the video in its preliminary review of these proceedings. As noted above, defendants have not amended their motion, and plaintiff filed his opposition after requesting the video be obtained. Nevertheless, to the extent necessary, **the**

---

[6] "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d).

**Court hereby instructs the parties that this report and recommendation is notice that the Court is converting the defendants' motion to dismiss into a motion for summary judgment and that the parties may submit any additional evidence or argument concerning the Court's ruling as part of any objections they may file to this report.** *See Henderson*, 2009 WL 10673173, at *1. The motion to dismiss is hereby converted to a motion for summary judgment.

### B.    Fed. R. Civ. P. 56 Motion for Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) (citing Fed. R. Civ. P. 56). The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Id.*

For summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). The moving party, however, "need not negate the elements of the nonmovant's case." *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). The moving party may meet its burden "by pointing out the absence of evidence supporting the nonmoving party's case." *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995).

If the moving party meets its initial burden, "the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial." *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001). "An issue is material if its resolution could affect the outcome of the action. A dispute as to a material fact is genuine if

the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).

In deciding whether a genuine and material fact issue has been created, the facts and inferences to be drawn from them must be reviewed in the light most favorable to the nonmoving party. *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003). However, factual controversies are resolved in favor of the non-movant "when both parties have submitted evidence of contradictory facts." *Alexander v. Eeds*, 392 F.3d 138, 142 (5th Cir. 2004) (citing *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999)). The non-movant's burden is not met by mere reliance on the allegations or denials in the non-movant's pleadings. *See Diamond Offshore Co. v. A & B Builders, Inc.*, 302 F.3d 531, 545 n. 13 (5th Cir. 2002), *overruled on other grounds*, *Grand Isle Shipyard, Inc. v. Seacor Marine, LLC*, 589 F.3d 778 (5th Cir. 2009).

Likewise, "conclusory allegations" or "unsubstantiated assertions" do not meet the non-movant's burden. *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008). Instead, the nonmoving party must present specific facts which show "the existence of a genuine issue concerning every essential component of its case." *Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 343 F.3d 401, 405 (5th Cir. 2003) (quoting *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998)). In the absence of any proof, the court will not assume that the non-movant could or would prove the necessary facts. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

## C.    Qualified Immunity

Defendants have urged qualified immunity as an alternative ground for dismissal of the claims against them in their personal capacities.  A state official sued in his personal capacity under § 1983 is entitled to qualified immunity from damages, which protects the official from liability for any act that was not objectively unreasonable at the time of the act.  *Waller v. Hanlon*, 922 F.3d 590, 599 (5th Cir. 2019) (citing *Lincoln v. Turner*, 874 F.3d 833, 847 (5th Cir. 2017)).  The Supreme Court has made clear that qualified immunity functions as an immunity from suit, rather than a mere defense to liability.  *Pearson v. Callahan*, 555 U.S. 223, 237 (2009).  As the Fifth Circuit has recently summarized:

> The basic steps of our qualified-immunity inquiry are well-known: a plaintiff seeking to defeat qualified immunity must show: "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Lincoln*, 874 F.3d at 847-48 (quoting *Morgan* [*v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011)]).   When confronted with a qualified-immunity defense at the pleadings stage, the plaintiff must plead "facts which, if proved, would defeat [the] claim of immunity." *Westfall v. Luna*, 903 F.3d 534, 542 (5th Cir. 2018) (quoting *Brown v. Glossip*, 878 F.2d 871, 874 (5th Cir. 1989)).

*Waller*, 922 F.3d at 599.

"[T]he qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Brumfield v. Hollins*, 551 F.3d 322, 326-27 (5th Cir. 2008) (quoting *Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir. 2000).  It is up to the district courts' sound discretion to decide which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case.  *Pearson*, 555 U.S. at 236.

## III. <u>Discussion</u>

### A.    <u>Requested Review Under 28 U.S.C. § 1915(e)</u>

Although captioned as a motion seeking dismissal under Fed. R. Civ. Proc. 12(b)(6), now converted to summary judgment, the defendants in part seek dismissal of Moses's claims as frivolous pursuant to 28 U.S.C. § 1915(e).  However, § 1915(e)(2) and its companion provisions, including 28 U.S.C. § 1915A, by their very terms authorize *the Court* to *sua sponte* dismiss a case filed by a prisoner proceeding *in forma pauperis* upon a determination that the case is frivolous or malicious, fails to state a claim for which relief can be granted, or seeks monetary relief against an immune defendant.  *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994); *see Jackson v. Vannoy*, 49 F.3d 175, 176-77 (5th Cir.1995); *Moore v. Mabus*, 976 F.2d 268, 269 (5th Cir. 1992).  Where the Court is not convinced that a complaint, on its face, is ripe for dismissal under these standards, the complaint will survive initial screening to allow for further development of the record.

The Court has already exercised its duty to conduct the statutory frivolousness review by separate Partial Report and Recommendation.  The statute does *not* provide a basis for a defendant to urge a motion to dismiss, and § 1915(e)(2) is *not* a listed ground for dismissal under Fed. R. Civ. P. 12(b), 12(d), or 56.  Defendants have no basis to invoke § 1915(e)(2) as a grounds for relief in their motion.  The motion is moot in that regard.

### B.    Suit Against Defendants in their Official Capacities

Defendants seeks dismissal of Moses's claims against them based on an assumption that they have been named in their *official capacities*, because Moses outlines actions taken by each defendant during their *official duties* at the jail.  In contradiction, the defendants also discuss why Moses's allegations failed to state a claim of against each defendant based on legal theories that address their *individual* actions and liability.  Moses, however, did not specify in his complaint or during the *Spears* Hearing whether he sued the defendants in their official or personal/individual

15

capacities.  Defendants, nevertheless, seem to conflate the phrases "official capacity" and "official duty," and they are not synonymous.

The Fifth Circuit has explained that "[t]he performance of official duties creates two potential liabilities, individual-capacity liability for the person and official-capacity liability for the [state]."  *Turner v. Houma Mun. Fire & Police Civil Serv. Bd.*, 229 F.3d 478, 484 (5th Cir. 2000); *New Orleans Towing Ass'n v. Foster*, 248 F.3d 1143, 2001 WL 185033, at *3-4 (5th Cir. 2001) (unpub.).  Because Moses did not specify capacity in his initial pleadings, the Court examines "the course of proceedings" to determine "the nature of the liability sought to be imposed."  *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985) (internal citation omitted); *see also United States ex rel. Adrian v. Regents of Univ. of Cal.*, 363 F.3d 398, 402-03 (5th Cir. 2004) (finding that the course of proceedings demonstrated that defendants were named only in their official capacities); *Parker v. Graves*, 479 F.2d 335, 336 (5th Cir. 1973) (explaining that a defendant's capacity need not be pled, and "[t]he allegations in the complaint must be examined in order to determine the nature of the plaintiff's cause of action").  The Supreme Court has explained the difference between the official and personal, or individual, capacity liability.  The Court describes official capacity suits as those seeking relief from a governing entity whose policies and practices are alleged to have caused injury:

> In *Kentucky v. Graham*, 473 U.S. 159 (1985), the Court sought to eliminate lingering confusion about the distinction between personal- and official-capacity suits.  We emphasized that official-capacity suits "'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Id.*, at 165 (quoting *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, n.55 (1978)).  Suits against state officials in their official capacity therefore should be treated as suits against the State.  473 U.S. at 166.  Indeed, when officials sued in this capacity in federal court die or leave office, their successors automatically assume their roles in the litigation.  *See* Fed. Rule Civ. Proc. 25(d)(1); Fed. Rule App. Proc. 43(c)(1); this Court's Rule 35.3.  Because the real party in interest in an official-capacity suit is the governmental entity and not the named official, "the

entity's 'policy or custom' must have played a part in the violation of federal law."
*Graham*, *supra*, at 166 (quoting *Monell*, *supra*, 436 U.S. at 694).  For the same
reason, the only immunities available to the defendant in an official-capacity action
are those that the governmental entity possesses.  473 U.S. at 167.

*Hafer v. Melo*, 502 U.S. 21, 25 (1991).

In contrast, the Supreme Court describes individual or personal capacity suits as those

holding defendants liable for their personal actions leading to the constitutional harm:

> Personal-capacity suits, on the other hand, seek to impose individual
> liability upon a government officer for actions taken under color of state law.  Thus,
> "[o]n the merits, to establish personal liability in a § 1983 action, it is enough to
> show that the official, acting under color of state law, caused the deprivation of a
> federal right."  [*Graham*], at 166.  While the plaintiff in a personal-capacity suit
> need not establish a connection to governmental "policy or custom," officials sued
> in their personal capacities, unlike those sued in their official capacities, may assert
> personal immunity defenses such as objectively reasonable reliance on existing
> law.  *Id*., at 166-167.

*Hafer*, 502 U.S. at 25.

Using *Graham*'s course-of-proceeding parameters, Moses's allegations provide *no*

indication that any of the defendants are being sued in an official, rather than personal/individual,

capacity.  Instead, Moses alleges personal, unconstitutional actions taken by each defendant,

without reference to jail policy or custom.  In fact, defendants seem to recognize this by addressing

each individual actions in the motion itself.  Also, the only defendants identified as supervisory

figures are Sgt. Richardson and Lt. Raiford, but Moses has alleged liability for personal actions by

these defendants not tied to any official policy.  He basically has accused these defendants of

ignoring his complaints made directly to them, failing to intervene in the stair incident when they

each were present, and using racial slurs against him.  In fact, in his opposition memorandum, he

clearly pleads that the defendants are liable in their individual capacities.  Affording his *pro se*

claims liberal construction, Moses has *not* asserted an official capacity claim against any defendant.

Finally, the complaint also includes a demand for punitive damages. This too should indicate Moses's intent to sue the defendants in an individual, not official, capacity. As noted by defendants, punitive damages are not available against defendants sued in an official capacity. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 270-71 (1981) (holding that municipalities and other government entities are immune from punitive damages under § 1983).

The course of these proceedings dictate that defendants are sued each in a personal or individual capacity. However, even if Moses intended to sue the defendants in their official capacities, he has failed to state a claim for which relief can be granted for reasons wholly different from those asserted in defendants' motion (which are based on theories of individual liability).

As discussed above, "[o]fficial capacity suits generally represent another way of pleading an action against an entity of which an officer is an agent." *Burge v. Parish of St. Tammany*, 187 F.3d 452, 466 (5th Cir. 1999). Any official-capacity claim against the individual defendants would in reality be a claim against the local governmental body itself. *Picard v. Gusman*, No. 12-1966, 2012 WL 6504772, at *4 (E.D. La. Nov. 26, 2012), *adopted*, 2012 WL 6504528 (E.D. La. Dec. 13, 2012); *Alexander v. City of Gretna*, No. 06-5405, 2010 WL 3791714, at *3 (E.D. La. Sept. 17, 2010); *Weatherspoon v. Normand*, No. 10-060, 2010 WL 724171, at *2-3 (E.D. La. Feb. 22, 2010). Plaintiff's claim against the named sheriff's deputies and prison nurse in an official capacity would be claims against St. Charles Parish.[7] *See Burge*, 187 F.3d at 466. However, as already explained,

---

[7] The St. Charles Parish Sheriff's Office and the St. Charles Parish jail are not suable persons under § 1983. *Francis v. Terrebonne Parish Sheriff's Office*, No. 08-4972, 2009 WL 4730707, at *2 (E.D. La. Dec. 9, 2009) ("However, a parish sheriff's office is not a legal entity capable of being sued in a federal civil rights action.") (citing *Cozzo v. Tangipahoa Parish Council-President Government*, 279 F.3d 273, 283 (5th Cir. 2002); *Williamson v. Louisiana*, No. 08-4598, 2008 WL 5082911, at *3 (E.D. La. Nov. 24, 2008); *Fitch v. Terrebonne Parish Sheriff Dep't*,

to state a cognizable claim against a local governmental body, a plaintiff must allege that an official policy or custom caused the purported constitutional violation.

A plaintiff seeking to impose liability on a municipality under § 1983 must show that there was either an official policy or an unofficial custom, adopted by the municipality, that was the moving force behind the claimed constitutional violation. *Duvall v. Dallas Cnty.*, 631 F.3d 203, 209 (5th Cir. 2011) (citing *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 694 (1978). A municipality is almost never liable for an isolated unconstitutional act on the part of an employee but rather is liable only for acts directly attributable to it "through some official action or imprimatur." *Peterson v. City of Ft. Worth, Tex.*, 588 F.3d 838, 847 (5th Cir. 2009) (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)).

Plaintiff has made no such allegation in this case. He has not referenced or even eluded to a particular policy or custom as the "moving force" behind the alleged unconstitutional deprivations asserted against the individual defendants. *Monell*, 436 U.S., at 694 (in an official-capacity suit, the governing entity's "policy or custom" must have been a "moving force" in the violation of federal law.) Moses, therefore, has not stated an official capacity claim against any defendant. Thus, as a matter of law, any intended official capacity claim against the defendants should be dismissed. The defendants' motion should be granted on this basis.

### C.    <u>Suit Against Remaining Defendants in their Individual Capacities</u>

Defendants alternatively urge in their motion entitlement to qualified immunity to the extent Moses sued them in their personal capacities. As outlined previously, the undersigned Chief

---

No. 06-3307, 2006 WL 2690077, at *2 (E.D. La. Sept. 18, 2006); *Douglas v. Gusman*, 567 F. Supp.2d 877, 892 (E.D. La. 2008) (Order adopting Report and Recommendation); *Jones v. St. Tammany Parish Jail*, 4 F. Supp.2d 606, 613 (E.D. La. 1998) (a parish jail is "not an entity, but a building."); *see also*, *Kerr v. Orleans Parish Sheriff's Office Prison*, No. 15-0746, 2015 WL 4755174 (E.D. La. Aug, 10, 2015).

Magistrate Judge has separately issued a Partial Report and Recommendation on statutory review recommending the dismissal under 28 U.S.C. § 1915(e) and § 1915A of some of Moses's claims against some of the defendants in their personal capacities.  To the extent the defendants' motion seeks dismissal of claims the Court has already recommended be dismissed, the motion should be denied as moot.

Thus, the only personal capacity claims remaining at issue are Moses's claims of intentional indifference and excessive force against Deputy Mahmoud and his claims of intentional indifference and failure to intervene by defendants Sgt. Richardson and Lt. Raiford.

### 1.      The Video Recording

In connection with these claims, the Court has reviewed the raw video recording of the incident at the jail.  The Court is aware that the video has not been verified for its evidentiary value, but that does not change its availability for review during motion proceedings.  "Although the substance or content of the evidence submitted to support or dispute a fact on summary judgment must be admissible [for trial purposes] ..., the material may be presented in a form that would not, in itself, be admissible at trial." *Lee v. Offshore Logistical & Transp., L.L.C.*, 859 F.3d 353, 355 (5th Cir. 2017); *Saketkoo v. Tulane University School of Medicine*, No. 19-12578, 2020 WL 7861308, at *13 (E.D. La. Dec. 31, 2020) (considering unauthenticated audio recording on summary judgment); *Cobb v. James Construction Group, LLC*, No. 17cv208, 2020 WL 3516227, at *6 (E.D. Tex. Jan. 13, 2020).  In other words, under Fed. R. Civ. 56(c)(2), the evidence need not be in admissible form to be considered at summary judgment, provided it can be put into admissible form for trial.  *Cobb*, 2020 WL 3516227, at *6 (citing *Acosta v. Mezcal, Inc.*, No. CV JKB-17-0931, 2019 WL 2550660, at *2 (D. Md. June 20, 2019), and *Kurland v. ACE Am. Ins. Co.*, Civ. No. JKB-15-2668, 2017 WL 354254, at *3 n.2 (D. Md. Jan. 23, 2017)).

Furthermore, in *Scott v. Harris*, 550 U.S. 372, 380 (2007), the Supreme Court weighed the use of a video recording and held that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Instead, the Supreme Court directs that the lower court should refrain from such a credibility call and deny the motion when video evidence offers at least some support for the nonmovant's version of the events. *See Comeaux v. Sutton*, 496 F. App'x 368, 371-73 (5th Cir. Oct. 11, 2012) (reversing the district court's grant of summary judgment because it failed to view the facts and inferences in the light most favorable to the nonmovant). The Court, here, has considered the video, which would be admissible evidence in proper form, in the light most favorable to plaintiff as the nonmoving party.

The first twelve (12) seconds of the video lead to the plaintiff's fall. The video has no audio playback and is somewhat grainy based on the distance from the camera to the action. The deputies are all wearing surgical-style masks commonly used during the COVID-19 pandemic making it impossible to determine if anyone is speaking.

The video begins with a deputy, presumably Deputy Mahmoud, using his left hand to hold the right bicep of an inmate, presumably plaintiff, followed by two other deputies walking out of a cell on an upper level of the jail. The inmate is shirtless and wearing orange pants and white slipper-style shoes. He is also handcuffed behind his back. The two other deputies gather the inmates belongings and mattress as the inmate heads towards the top of the steps with the escorting deputy almost directly behind him still holding the inmate's right bicep with his left hand.

As the inmate heads down the first part of the stairs, which is six (6) steps to the landing, the deputy is about two steps up and behind still holding the inmates right bicep. As they reach

the flat landing level, the two men are almost side by side.  The inmate continues down the next section of stairs (about twelve (12) steps to the floor).  The video indicates that the pace of the inmate and the deputy appears to be quick on the second part of the stairs.  The deputy also is now almost to the right barely behind the inmate's right shoulder, and still holding the inmate's bicep with his left hand.

As they reach the last four steps, the video seems to reflect that the inmate's torso is now more forward than his hips and feet, as if he is leaning, pulling, or perhaps being pushed forward.  By the third to last step, the inmate begins to fall forward past (or skipping) the last two stairs, landing on the ground with his left foot and then falling to the ground onto his left shoulder.  The fall caused one slipper to come off and remain on the stairs.

During the inmate's fall, the escort deputy is still holding the inmate's right bicep and as the deputy's arm extends forward as the inmate falls, he too is pulled forward down the last few steps.  The deputy lands on the ground standing on his feet, with the inmate between his straddled legs.

The video also shows a heavy-set officer, presumably Sgt. Richardson, standing on the first floor during the entire recording.  While this officer was facing the steps for part of the inmate's descent down the stairs, his back was turned during the inmate's actual fall.  The video does not reflect that a female officer, Lt. Raiford, was present at any point of the recording.

The inmate remained on the ground for another twenty (20) seconds as he was assisted to his feet by the escorting deputy.  The other two deputies carrying the inmate's belongings were also nearby.  One deputy appears to assist the escort deputy to get the inmate to his feet.  The heavy set officer walked to the bottom of the steps while the plaintiff was on the floor and remained

nearby until the inmate was up and being escorted off camera by the escorting deputy and one of the other deputies.  The heavy-set officer then followed them out of the doorway off camera.

### 2.    Claims Against Sgt. Richardson and Lt. Raiford

Moses alleged in his complaint and *Spears* Hearing testimony that Sgt. Richardson and Lt. Raiford were present when he fell and must have known or at least heard his complaints that Deputy Mahmoud was rushing his descent down the stairs.  He contends that Sgt. Richardson and Lt. Raiford should have intervened to prevent the use of force and his fall.

The treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  "[A] prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it."  *Id*. at 847.  In other words, the prison official must have a sufficiently culpable state of mind, one of "deliberate indifference" to inmate health or safety.  *Id*. at 834.  To find that an official is deliberately indifferent, it must be proven that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id*. at 837.  "[T]he failure to alleviate a significant risk that [the official] should have perceived, but did not is insufficient to show deliberate indifference."  *Domino v. Tex. Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001).

In keeping with these general provisions, the United States Fifth Circuit has held that an officer who is present at the scene and does not take reasonable measures to protect a suspect from another officer's use of excessive force may be found to have violated a federal right under § 1983

23

through a theory of bystander liability. *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995). The officer must still have drawn the inference of risk and failed to act to protect the inmate. Specifically, an officer may be liable if "the officer '(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act.'" *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013) (quoting *Randall v. Prince George's Cnty., Md.*, 302 F.3d 188, 204 (4th Cir. 2002) and citing other supporting cases).

### a.    Lt. Raiford

Based on the video recording evidence, Lt. Raiford was not present when Moses was moved from the upper tier cell down the stairs. Because she was not present, she cannot be held liable as a bystander. Furthermore, because she was not present, she could not have known of and disregarded any risk Moses faced coming down the stairs for purposes of an intentional indifference claim under the Eighth Amendment. Having found no genuine issue of fact with regard to her liability, Lt. Raiford is entitled to judgment as a matter law and Moses's remaining claims against her should be dismissed.

### b.    Sgt. Richardson

Moses based his claim of bystander liability on the fact that Sgt. Richardson was at the bottom of the stairs when the incident occurred and either saw the pushing or should have heard him complaining to Deputy Mahmoud that he was pushing him too fast down the stairs. As mentioned above, the video recording has no audio playback and it is impossible to determine whether plaintiff made oral complaints or Deputy Mahmoud responded. What is clear from the video is that Sgt. Richardson was facing the stairs for part of the escort down before he turned away seconds before plaintiff fell.

Plaintiff claims that Sgt. Richardson's deliberate indifference and bystander liability are rooted in his presence at the scene, his ability to view the descent, and his possible awareness that plaintiff asked the deputy to slow down.  He claims that this verbal exchange if not the view triggered the Sergeant's duties under the Eighth Amendment to intervene and protect him from the risk of harm.  The video does not resolve, and may actually create more, genuine issues of fact preventing conclusions of liability as a matter of law.  The video evidence simply does not clearly negate the elements of intentional indifference and bystander liability to warrant judgment in defendants' favor.  Facts remain unresolved as to whether Sgt. Richardson was indifferent to or had knowledge of a potential risk or use of force or whether Sgt. Richardson should have intervened or attempted to abate the associated risk to plaintiff's safety.

For purposes of the qualified immunity defense, plaintiff has at least stated violations of clearly established constitutional rights under the Eighth Amendment that cannot be resolved based on the summary judgment evidence before the Court.  There still exists questions of "facts which, if proved, would defeat [the] claim of immunity." *Westfall*, 903 F.3d at 542.  Plaintiff's claims refute the immunity defense at this stage of the proceedings.  For this reason, the Court cannot find that that Sgt. Richardson is entitled to judgment as a matter of law.  The motion should be denied with respect to these claims.

### 3.    Claims Against Deputy Mahmoud

In his complaint and *Spears* Hearing testimony, Moses claims that, while escorting him off the tier, Deputy Mahmoud took him by the arm and walked him to the stairs.  Moses stated that he was handcuffed and wearing shower slippers as shoes.  While descending the stairs, Moses claims he asked the deputy to slow down and Deputy Mahmoud instead accelerated their descent by pushing plaintiff by the arm.  Moses claims that this caused him to stumble, and he fell down the

stairs onto his shoulder.  Moses claims that this amounted to excessive force and indifference to his safety.

Both deliberate indifference and excessive force that cause unnecessary and wanton infliction of pain will constitute cruel and unusual punishment proscribed by the Eighth Amendment.  *Hudson v. McMillan*, 503 U.S. 1, 5 (1992); *Farmer*, 511 U.S. at 832.  As outlined previously, under the Eighth Amendment, a prison official is intentionally indifferent "if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it."  *Farmer*, 511 U.S. at 847.

In evaluating a claim of alleged use of excessive force by a prison official, the Supreme Court has instructed that "the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  *Id*., 503 U.S. at 6-7.  To prevail on such a claim, a plaintiff must first prove a subjective component by establishing that ". . . the defendant acted maliciously and sadistically in an 'unnecessary and wanton infliction of pain.'"  *Mosley v. White*, 464 F. App'x 206, 211-12 (5th Cir. 2010) (quoting *Hudson*, 503 U.S. at 8).  To make this determination, a court should consider: (1) the extent of the injury suffered; (2) the need for the application of force; (3) the relationship between the need and the amount of force used; (4) the threat reasonably perceived by the responsible official; and (5) any efforts made to temper the severity of a forceful response.  *Baldwin v. Stalder*, 137 F.3d 836, 839 (5th Cir. 1998); *Hudson v. McMillan*, 962 F.2d 522, 523 (5th Cir. 1992).

A plaintiff must also establish an objective component, which requires that a prisoner demonstrate that the alleged wrongdoing was objectively "harmful enough" to establish a constitutional violation.  *Hudson*, 503 U.S. at 8.  However, not every malevolent touch, push, or shove by a prison official gives rise to a federal cause of action.  *Id*. at 9.  "Thus, a party's claim

must allege more than a *de minimis* use of physical force in order to state a prima facie case of an Eighth Amendment violation." *Mosley*, 464 F. App'x at 212 (citing *Eason v. Holt*, 73 F.3d 600, 604 n.24 (5th Cir. 1996)). "The *de minimis* use of physical force is excluded from 'constitutional recognition,' unless it is of a sort 'repugnant to the conscience of mankind.'" *Id.* (quoting *Hudson*, 503 U.S. at 9-10). Although there is no categorical requirement that the physical injury be significant, serious, or more than minor, ". . . it is clear that some physical injury is required." *Lacey v. Galveston County Sheriff's Dept.*, No. 06-CV-0441, 2008 WL 624615 at *6 (S.D. Tex. Mar. 5, 2008). If a prisoner fails to establish either the subjective or objective components, ". . . there is not a valid Eighth Amendment claim." *Mosley*, 464 F. App'x at 212.

Moses's claims involve both an allegation that Deputy Mahmoud failed to slow down when Moses asked him too, which amounted to deliberate indifference to his safety on the stairs while wearing slippers and cuffs, and that the alleged acceleration or push down the stairs by the Deputy also amounted to the use of excessive force under the circumstances. Moses alleges that Deputy Mahmoud intentionally accelerated their descent down the stairs despite, if not in response to, plaintiff's comment that they were moving too quickly for him in handcuffs and slippers.

As noted above, the video provided contains no audio playback to resolve as a matter of fact whether plaintiff or Deputy Mahmoud (or anyone) spoke while they were on the stairs. The video does show that plaintiff was cuffed behind his back and wearing slip-on shoes as he alleges. In addition, reasonable fact-finders could conclude that the video shows an increased pace especially on the second part of the staircase before the fall. The video does show that, while plaintiff's right arm was being held by Deputy Mahmoud, plaintiff's torso began to lean farther forward than his feet just prior to the fall over the last three steps. If this is proven to be a result of a push or increased pace caused by the Deputy, the acceleration or push would be more than *de*

*minimis* and would shock one's conscious while the deputy was escorting the plaintiff in handcuffs and slippers down the stairs.

The video alone does not resolve these genuine issues of fact related to intent and excess of any force and instead could easily be viewed to support the allegations presented by Moses. To be clear, for purposes of intentional indifference, the video does not preclude plaintiff's claims that Deputy Mahmoud knew of and ignored the risk that hastening the pace of a handcuffed inmate wearing shower shoes down a metal staircase would cause the inmate to fall and be injured. In addition, for purposes of excessive force, the video does not preclude plaintiff's claims that Deputy Mahmoud steered or hastened Moses down the stairs by pushing his arm, causing him to fall forward down the stairs. In both instances, Moses has alleged that the indifference and/or force resulted in more than *de minimis* physical injury for which he required medical attention and is still receiving medical care.

As noted above, the video does not resolve the genuine issues of material fact to preclude the claims stated by Moses. As before, the video perhaps could be seen to confirm that genuine issues of fact exist with respect to the critical elements of Moses's Eighth Amendment claims against Deputy Mahmoud. Because of this, the Court also must conclude, as it did with Sgt. Richardson, that plaintiff has alleged facts, which if proven, defeat the qualified immunity defense. *Westfall*, 903 F.3d at 542. The defendant, therefore, is not at this time entitled to judgment as a matter of law.

## IV.   <u>Recommendation</u>

It is therefore **RECOMMENDED** that defendants' **Motion to Dismiss (ECF No. 14)** be **GRANTED in part** and **DENIED in part** in the following manner:

The Motion should be **GRANTED** to **DISMISS WITH PREJUDICE** plaintiff's § 1983 claims against defendants, Deputy Mohamed Mahmoud, Sgt. Darryl Richardson, Lt. Elizabeth Raiford, Deputy Garrett Haun, and Nurse Juanasha Smith, each in their official capacity;

The Motion should be **GRANTED** to **DISMISS WITH PREJUDICE** plaintiff's § 1983 claims asserting Eighth Amendment claims of intentional indifference and bystander liability against defendant Lt. Raiford;

The Motion should be **DENIED as MOOT** to the extent it seeks dismissal of plaintiff's § 1983 claims under 28 U.S.C. § 1915(e)(2) and otherwise seeks dismissal of plaintiff's § 1983 claims already disposed of in the Court's statutory frivolousness review, which recommended dismissal with prejudice as frivolous and otherwise for failure to state a claim for which relief can be granted pursuant to § 1915(e) and § 1915A of Moses's § 1983 claims against Nurse Smith and Deputy Haun and Moses § 1983 claims against Sgt. Richardson and Lt. Raiford for use of verbal slurs and threats and failure to investigate and address his PREA complaint.

The Motion should be **DENIED** to the extent its seeks qualified immunity from and dismissal of plaintiff's § 1983 claims asserting Eighth Amendment claims of intentional indifference and bystander liability against defendant Sgt. Richardson;

The Motion should be **DENIED** to the extent its seeks qualified immunity from and dismissal of plaintiff's § 1983 claims asserting Eighth Amendment claims of intentional indifference and excessive force against defendant Deputy Mahmoud.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by

the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[8]

New Orleans, Louisiana, this    10th    day of February, 2021.

_____
**KAREN WELLS ROBY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

---

[8]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.