UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DAYTREND DENONE MOSES** | **CIVIL ACTION** |
| **VERSUS** | **NO. 20-2361** |
| **MOHAMED MAHMOUD, ET AL.** | **SECTION: "P" (3)** |

ORDER AND REASONS

Before the Court is a Motion for Summary Judgment[1] whereby the remaining defendants in this action, Mohamed Mahmoud ("Mahmoud") and Darryl Richardson ("Richardson") (together, "Defendants"), seek dismissal of the remaining claims in this action. For the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion for Summary Judgment.

I.  BACKGROUND

Plaintiff Daytrend DeNone Moses ("Moses") contends that Mahmoud and Richardson, St. Charles Parish Sheriff's Deputies employed at the Nelson Coleman Correctional Center ("Correctional Center"), are liable to him in their individual capacities pursuant to 28 U.S.C. § 1983.[2] Moses seeks compensatory and punitive damages for Eighth Amendment violations against Mahmoud for deliberate indifference and excessive force and against Richardson for deliberate indifference and bystander liability.[3]

On August 26, 2020, Moses filed this action against five Correctional Center employees (including Mahmoud and Richardson) arising out of mistreatment Moses alleges began on April 20, 2020, while he was an inmate at the Correctional Center.[4] Many of those claims were

---

[1] R. Doc. 44.
[2] R. Doc. 1.
[3] *Id.*
[4] *See id.* Moses brought claims against Deputy Garrett Haun ("Haun"), Lieutenant Elizabeth Raiford ("Raiford"), and Nurse Juanasha Smith ("Smith") that were previously dismissed as frivolous. *See* R. Doc. 25.

previously dismissed.[5] Moses's claims related to a fall he suffered as Mahmoud escorted him down a flight of stairs at the Correctional Center.[6] Moses contends that when he asked Mahmoud where he was going, Mahmoud told him to stop complaining and began to speed up.[7] Moses alleges that he asked Mahmoud to go slower but that Mahmoud pushed him down the stairs.[8] Moses further alleges that, although Richardson was standing nearby, Richardson failed to intervene when Mahmoud was pushing him down the stairs and that, after the fall, Richardson told him that something worse would happen if he did not stop complaining.[9]

On November 23, 2020, all of the original defendants filed a motion to dismiss; United States Magistrate Judge Karen Wells Roby thereafter conducted a *Spears* hearing.[10] On February 10, 2021, Judge Roby promulgated two reports and recommendations: the first reviewed Moses's claims for frivolousness and the second ruled on Defendants' motion to dismiss.[11] The second Report and Recommendation converted Defendants' motion to dismiss into a motion for summary judgment and recommended that many of Moses's claims be dismissed.[12] Over Defendants' objections,[13] United States District Judge Jane Milazzo adopted Judge Roby's reports and

---

[5] R. Docs. 22 & 23.
[6] Judge Roby's Partial Report and Recommendation did not decide whether Raiford could be held liable for claims of intentional indifference, failing to intervene, using verbal slurs and threats, and failing to investigate Moses's PREA complaint. *See* R. Doc. 17 at 18. But in the Report and Recommendation, dated the same day, Judge Roby recommended that all claims against Raiford be dismissed. R. Doc. 18 at 19, 24, 29. Judge Milazzo adopted the recommendations and dismissed Moses's claims against Raiford. R. Docs. 23, 24, & 25.
[7] R. Doc. 17 at 4.
[8] R. Docs. 1, 17 at 3-4.
[9] R. Doc. 17 at 3-4.
[10] *See generally Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985). A *Spears* hearing allows a federal court to ascertain the factual and legal basis for a prisoner's § 1983 claims. Information received in a *Spears* hearing is considered an amendment to the complaint or a more definite statement. FED. R. CIV. P. 12(e).
[11] R. Docs. 17 & 18.
[12] R. Doc. 18 at 11-12.
[13] R. Doc. 19 (attaching declarations by Richardson, Haun, Mahmoud, and another prison official).

recommendations without alteration in a September 9, 2021 order; only Moses's claims against Mahmoud and Richardson survived.[14]

On September 27, 2021, Mahmoud and Richardson filed an Answer and Affirmative Defenses reasserting qualified immunity,[15] and on May 23, 2023, Mahmoud and Richardson filed the instant motion, effectively requesting reconsideration of Judge Milazzo's September 9, 2021 order.[16] On June 9, 2023, this action was transferred from Judge Milazzo to this Section.[17]

## II.  LEGAL STANDARD

Judge Milazzo's September 9, 2021 Order adopting Judge Roby's Report and Recommendation is an interlocutory order because it did not end the action.[18] Federal Rule of Civil Procedure 54(b) therefore governs this motion for reconsideration of an order that "adjudicate[d] fewer than all the claims or the rights and liabilities of fewer than all the parties.["][19] Rule 54(b) permits the district court to "reconsider and reverse its decision for any reason it deems sufficient."[20] But "[w]hen there exists no independent reason for reconsideration other than mere disagreement with a prior order, reconsideration is a waste of judicial time and resources and should not be granted."[21]

A federal district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

---

[14] Specifically, Judge Milazzo dismissed Moses's claims against Smith and Haun with prejudice, as frivolous and otherwise for failure to state a claim for which relief could be granted. *See* R. Doc. 22. Judge Milazzo also dismissed with prejudice Moses's claims against Richardson and Raiford for use of verbal slurs and threats and failure to investigate his PREA complaint. R. Doc. 22. Judge Milazzo also dismissed with prejudice Moses's Section 1983 claims against Mahmoud, Richardson, Raiford, Haun, and Smith in their official capacities. *See* R. Doc. 24. Finally, Judge Milazzo dismissed Moses's intentional indifference and bystander liability claims against Raiford. R. Doc. 24.
[15] R. Doc. 27.
[16] R. Doc. 44.
[17] R. Doc. 47.
[18] *McClendon v. United States*, 892 F.3d 775, 781 (5th Cir. 2018).
[19] Fed. R. Civ. P. 54(b); *see, e.g.*, *Muslow v. Bd. of Supervisors*, No. 19-11793, 2021 WL 3566302, at *2 (E.D. La. Aug. 12, 2021).
[20] *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 336 (5th Cir. 2017) (internal quotations and citation omitted).
[21] *In re Taxotere (Docetaxel) Prods. Liab. Litig.*, No. 16-cv-17039, 2020 WL 2473772, at *1 (E.D. La. May 13, 2020).

law."[22] A party seeking summary judgment must show there is no genuine dispute of fact by citing specific parts of the summary judgment materials or by showing that the adverse party cannot produce admissible evidence to support their alleged facts.[23] A party opposing summary judgment must set forth specific facts showing there is a genuine issue of material fact that must be resolved at trial.[24] "[U]nsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[25]

In instances when "opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."[26] Furthermore, when there is video evidence provided in the record, a court is "not bound to accept the nonmovant's version of the facts if it is contradicted by the video"[27] so long as "'the video evidence provides so much clarity that a reasonable jury could not believe'" the contradictory account.[28]

While typically the movant bears the initial burden of demonstrating the absence of a material fact, a good faith assertion of qualified immunity alters the usual summary judgment burden of proof, shifting the burden to the plaintiff to show that the defendant is not entitled to the defense.[29]

---

[22] FED. R. CIV. P. 56(a).
[23] FED. R. CIV. P. 56(c).
[24] *Id.*
[25] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (quoting CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & MARY K. KANE, FED. PRAC. & PROC.: CIV. § 2738 (2d ed. 1983)).
[26] *Scott v. Harris*, 550 U.S. 372, 380 (2007).
[27] *Crane v. City of Arlington*, 50 F.4th 453, 461-62 (5th Cir. 2022) (citing *Harris v. Serpas*, 745 F.3d 767, 771 (5th Cir. 2014)).
[28] *Id.* at 462 (quoting *Darden v. City of Fort Worth*, 880 F.3d 722, 730 (5th Cir. 2018)).
[29] *See Joseph on behalf of Est. of Joseph v. Bartlett*, 981 F.3d 319, 329–30 (5th Cir. 2020) (quoting *Orr v. Copeland*, 844 F.3d 484, 490 (5th Cir. 2016)).

### III. LAW AND ANALYSIS

As a preliminary matter, Defendants correctly note that Moses does not explicitly cite any evidence in the record in opposing the instant motion.[30] But, reading Moses's brief liberally,[31] Moses relies on his *Spears* hearing testimony to oppose the instant motion. Moses's *Spears* testimony, made under oath, qualifies as competent evidence for consideration at this stage of litigation because it is based on his personal knowledge and is neither conclusory nor vague.[32]

**A. Moses's Section 1983 deliberate indifference claims.**

Section 1983 "enables persons who have 'been depriv[ed] of any rights, privileges, or immunities secured by the Constitution and laws' of the United States by the actions of a person or entity operating under color of state law to seek redress from those state actors responsible for the deprivations."[33] Deliberate indifference that causes unnecessary and wanton pain constitutes cruel and unusual punishment proscribed by the Eighth Amendment.[34] Moses claims that both Mahmoud and Richardson acted with deliberate indifference when Moses fell to the ground as Mahmoud escorted him down the stairs.

To prove deliberate indifference, a plaintiff must show that (1) "he is incarcerated under conditions posing a substantial risk of serious harm," and (2) "the prison official's state of mind is one of deliberate indifference to the prisoner's health or safety."[35] The first component of this test is evaluated "contextually," considering "whether society considers the risk . . . to be so grave that

---

[30] R. Doc. 50 at 3-4.
[31] *See Leeper v. Travis Cnty.*, 1:16-CV-819-RP, 2018 WL 5892377, at *3 n.5 (W.D. Tex. Nov. 9, 2018) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)).
[32] R. Doc. 18 at 5-7 (describing Moses's detailed *Spears* testimony regarding the incident); *see also Guzman v. Allstate Assurance Co.*, 18 F.4th 157, 161 (5th Cir. 2021). While Moses did not include himself on his witness list, the Court finds good cause to permit Moses to call himself as a witness. *See* R. Doc. 45 at 2; *Leeper*, 2018 WL 5892377, at *3 n.5. And because Defendants included themselves and Haun on their witness list, Moses's *Spears* hearing testimony and the declarations of Mahmoud, Richardson, and Haun are proper summary judgment evidence.
[33] *Orr*, 844 F.3d at 491–92 (citing 42 U.S.C. § 1983).
[34] *Helling v. McKinney*, 509 U.S. 25, 33-34 (1993).
[35] *Williams v. Banks*, 956 F.3d 808, 811 (5th Cir. 2020) (internal quotations omitted).

it violates contemporary standards of decency to expose anyone unwillingly to such a risk."[36] Physical assaults qualify as a serious harm.[37] As to the second component, deliberate indifference requires a showing of more than negligence or even gross negligence.[38] Rather, "[a] deliberately indifferent state of mind requires that 'the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'"[39] "[T]he failure to alleviate a significant risk that [the official] should have perceived but did not is insufficient to show deliberate indifference."[40]

      *i.*     *Moses's deliberate indifference claim against Mahmoud.*

Moses alleges that, as Mahmoud escorted him down the stairs—Moses in handcuffs and Mahmoud holding his right bicep—he asked Mahmoud "why and where" he was being taken.[41] Mahmoud then allegedly told Moses "to shut up and began to accelerate [Moses's] descent essential[ly] pushing [Moses] down."[42] In Moses's *Spears* hearing testimony, he recounted that "when [he] asked [Mahmoud] to slow down, Deputy Mahmoud pushed him faster and told him to stop complaining."[43] Moses further stated that "he then fell to the floor because [Mahmoud] was pushing him" and that he "injured his shoulder and knee and twisted his back."[44] There is no question that Moses faced a substantial risk of serious harm when descending the staircase while handcuffed and unable to brace himself from a fall.[45]

---

[36] *Horton v. Cockrell*, 70 F.3d 397, 401 (5th Cir. 1995) (internal quotations and citations omitted).
[37] *Id.*
[38] *Est. of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005).
[39] *Williams*, 956 F.3d at 811 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).
[40] *Domino v. Tex. Dep't of Crim. Just.*, 239 F.3d 752, 756 (5th Cir. 2001).
[41] R. Doc. 1 at ¶¶ 13-14.
[42] *Id.*
[43] R. Doc. 18 at 5.
[44] *Id.*
[45] R. Doc. 19-5 (Ex. D-1).

Moses's testimony contradicts the sworn declarations of Richardson, Haun, and Mahmoud. Richardson and Haun both attested that they did not hear Moses speak to Mahmoud.[46] Rather, Mahmoud and Haun attested that Mahmoud told Moses to slow down.[47] Mahmoud also attested that he "ordered Offender Moses to slow down" because he thought Moses's increased rate of speed "hindered [his] control over the escort and increased [Moses's] risk of injury."[48] Like Moses's *Spears* testimony, those declarations—all submitted by defendants in this action before any claims were dismissed[49]—constitute self-interested statements. But self-interested statements should not be discounted on that basis alone, and it is inappropriate for the Court to evaluate these witnesses' credibility at this stage.[50] These contradictory, self-interested sworn statements are, therefore, sufficient to create a genuine issue of material fact.[51]

The video of the incident fails to clearly support either Moses's narrative or Mahmoud's.[52] The video contains no audio; the camera angle obscures Mahmoud's arm behind Moses's body; and all the individuals that appear in it—including Moses, Richardson, and Mahmoud—are wearing masks that hide their facial movements and expressions.[53] Crediting Moses's *Spears* testimony—which, at this stage, the Court must[54]—a reasonable jury could find Mahmoud deliberately ignored Moses's pleas, or even increased the speed of their descent.

---

[46] R. Doc. 19-1 at ¶ 8; R. Doc. 19-2 at ¶¶ 8, 11.
[47] R. Doc. 19-2 at ¶ 8; R. Doc. 19-3 at ¶ 7.
[48] R. Doc. 19-3 at ¶ 7.
[49] *Compare* R. Docs. 19-1, 19-2, and 19-3 (February 23, 2021 Declarations of Richardson, Haun, and Mahmoud) *with* R. Doc. 25 (September 9, 2021 Order dismissing all claims against Haun and certain claims against Richardson and Mahmoud).
[50] *Guzman*, 18 F.4th at 160-61.
[51] *Id.* (citing *Bargher v. White*, 928 F.3d 439, 445 (5th Cir. 2019)).
[52] Though the video has not been verified for its evidentiary value, it may still support or dispute a fact on summary judgment. *Cobb v. James Constr. Grp.*, No. 517CV208-CMC, 2020 WL 3516227, at *6 (E.D. Tex. Jan. 13, 2020).
[53] R. Doc. 19-5 (Ex. D-1).
[54] *Falcon v. Holly*, 480 F. App'x 325, 326 (5th Cir. 2012).

Thus, summary judgment on this claim is inappropriate because genuine disputes of material fact remain—namely, whether Moses asked Mahmoud to slow down during their descent and whether Mahmoud ignored Moses's request.

      *ii.    Moses's deliberate indifference claim against Richardson*

Moses alleges Richardson watched him descend the stairs and heard him ask Mahmoud to slow down but took no action to prevent the fall.[55] As discussed above, Moses faced a substantial risk of serious harm while descending the stairs.

Moses argues that because Richardson heard, if not saw, the incident, Richardson had a duty under the Eighth Amendment to prevent the fall.[56] As discussed above, Moses's *Spears* hearing testimony and the declarations of Richardson, Haun, and Mahmoud present conflicting accounts of the incident. Moses testified that he asked Mahmoud to slow down.[57] On the other hand, Haun and Mahmoud attested Mahmoud told Moses to slow down on the staircase.[58] Meanwhile, Richardson attested he did not hear Moses or Mahmoud say a word to each other.[59]

While Moses's *Spears* hearing testimony provides sufficient evidence that, if accepted as true, Mahmoud heard Moses ask him to slow down, "'the failure to alleviate a significant risk that [the official] should have perceived, but did not' is insufficient to show deliberate indifference."[60] The video of the incident comports with Richardson's declaration, particularly his statement that he reacted to a call from another prisoner.[61] Nine seconds into the video, Richardson turns from facing the middle of the room towards a wall of cells, as if reacting to someone calling for

---

[55] R. Doc. 1 at ¶¶ 14–15; R. Doc. 18 at 5.
[56] R. Doc. 18 at 25.
[57] *Id.* at 5.
[58] R. Doc. 19-2 at ¶ 8; R. Doc. 19-3 at ¶ 7.
[59] R. Doc. 19-1 at ¶ 8.
[60] *Domino*, 239 F.3d at 756 (quoting *Farmer*, 511 U.S. at 838).
[61] R. Doc. 19-1 at ¶ 6.

his attention.[62]  While turning, Richardson momentarily faces the staircase as Moses and Mahmoud descend.[63]  Richardson only turns back toward Moses and Mahmoud after Moses falls at the foot of the staircase.[64]  Despite turning to respond to another prisoner's call, Richardson did not direct his attention to Moses and Mahmoud until after Moses fell to the ground.

The video compels the conclusion that, even if Moses asked Mahmoud to slow down, Richardson was not alerted to the danger of the situation and, therefore, lacked the knowledge required to sustain a claim of deliberate indifference.[65]  Reaching this conclusion does not require finding that Moses did not ask Mahmoud to slow down, only that Moses cannot rebut the video evidence showing Richardson react to another inmate's call but not his.  For these reasons, this Court respectfully disagrees with Judge Roby's Report and Recommendation and Judge Milazzo's Order adopting the same,[66] and finds summary judgment in Richardson's favor is appropriate as to this claim.

### B. Moses's excessive force claim against Mahmoud

To prevail on a claim of excessive force, a plaintiff must prove two components, one subjective and the other objective.  First, the plaintiff must show "the defendant acted maliciously and sadistically in an 'unnecessary and wanton infliction of pain'"[67] in light of (1) the extent of the injury suffered; (2) the need for the application of force; (3) the relationship between the need and the amount of force used; (4) the threat reasonably perceived by the responsible official; and

---

[62] R. Doc. 19-5 (Ex. D-1).
[63] *Id.*
[64] *Id.*
[65] *Domino*, 239 F.3d at 756.
[66] R. Docs. 18 & 24.
[67] *Mosley v. White*, 464 F. App'x 206, 211-12 (5th Cir. 2010) (quoting *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)).

9

(5) any efforts to reduce the severity of a forceful response.[68] Next, the plaintiff must show the use of physical force was objectively "harmful enough" to constitute a constitutional violation.[69]

Moses testified Mahmoud sped up as they descended the staircase, which, if credited by a reasonable jury, would constitute an "unnecessary and wanton infliction of pain" in causing injuries that Moses continues to suffer from today.[70] This use of force would be all the more egregious considering Moses was handcuffed and wearing shower slippers, and presented no threat to Mahmoud.[71] As discussed above, the injuries suffered by Moses qualify as objectively harmful enough to support an Eighth Amendment claim.

Because genuine disputes of material fact remain outstanding, summary judgment is inappropriate as to this claim.

### C. Moses's bystander liability claim against Richardson

Under a theory of bystander liability, an officer may be liable to an individual if the officer (1) knows that another officer is violating the individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act.[72] In determining liability, courts frequently consider whether the officer "acquiesced" to the violation.[73]

As discussed above, even if Moses did ask Mahmoud to slow down, Moses cannot overcome the video evidence indicating Richardson did not notice.[74] As Moses's claim is premised on Richardson's failure to intervene in the fall, Moses cannot show that Richardson knew

---

[68] *Baldwin v. Stalder*, 137 F.3d 836, 839 (5th Cir. 1998).
[69] *Hudson*, 503 U.S. at 8.
[70] R. Doc. 18 at 5-6.
[71] R. Doc. 19-5 (Ex. D-1).
[72] *Whitley v. Hanna*, 726 F.3d 631, 646-47 (5th Cir. 2013).
[73] *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995).
[74] As discussed above, this Court's disagreement with Judge Roby's Report and Recommendation, R. Doc. 18, does not require concluding that Moses did not ask Mahmoud to slow down. This Court only decides that Moses has failed to rebut the video evidence showing that Richardson was not alerted to Moses's call. R. Doc. 19-5 (Ex. D-1).

that his rights were being violated or that he chose not to intervene. Thus, Moses's bystander claim against Richardson also fails.

### D. Defendants' qualified immunity defense

In the instant motion, Defendants argue that while "Mr. Moses will not be able to overcome" the bar of qualified immunity at trial, "for the purpose of this motion on the merit of his claim, Mr. Moses can present no genuine issue of material fact that he can prevail on his claims."[75] In order to defeat qualified immunity, a plaintiff must show (1) that the defendant violated a statutory or constitutional right, and (2) that the right was "clearly established" as the time of the challenged conduct.[76] To meet this burden, a plaintiff must identify specific evidence in the summary judgment record demonstrating that "there is a genuine dispute of material fact and that a jury could return a verdict entitling the plaintiff to relief for a constitutional injury."[77]

As discussed above, Moses's *Spears* hearing testimony provides sufficient evidence for a jury to return a verdict for Moses on his deliberate indifference and excessive force claims against Mahmoud. Thus, Mahmoud is not entitled to qualified immunity.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion is **GRANTED IN PART** and **DENIED IN PART**.

Accordingly, **IT IS ORDERED** that the Court's September 9, 2021 Order (R. Doc. 24) remains the same, except that Moses's claims against Richardson are **DISMISSED** with prejudice.

New Orleans, Louisiana, this 25th day of September 2024.

*DARREL JAMES PAPILLON*
UNITED STATES DISTRICT JUDGE

---

[75] R. Doc. 44-1 at 2 n.2.
[76] *Waller v. Hanlon*, 922 F.3d 590, 599 (5th Cir. 2019).
[77] *Est. of Joseph*, 981 F.3d at 330.